IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ONIVALDO VIEIRA DOS REIS | : | CIVIL ACTION |
| | : | |
| v. | : | No. 26-3775 |
| | : | |
| BRIAN MCSHANE, | : | |
| *Field Office Director of Philadelphia* | : | |
| *Field Office, ICE, et al.* | : | |

**MEMORANDUM**

**Judge Juan R. Sánchez**                                                                 **June 17, 2026**

Petitioner Onivaldo Vieira Dos Reis brings this petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2241, challenging his detention by the Department of Homeland Security

(DHS). He argues his detention violates the Due Process Clause because Immigration and Customs

Enforcement (ICE) did not make an individualized custody determination before detaining him

under 8 U.S.C. § 1226(a). Because the record shows ICE did not make the required individualized

assessment of flight risk or dangerousness, the Court will grant the petition and order his release.

**BACKGROUND**

Petitioner Onivaldo Vieira Dos Reis is a native and citizen of Brazil. Pet. ¶ 1, Dkt. No. 1.

He entered the United States on a B-2 tourist visa on May 10, 2016 and has remained beyond his

authorized period of admission—May 17, 2016. *Id.* ¶¶ 1, 13; Gov't Resp. 3, Dkt. No. 4. ICE

arrested him on June 1, 2026 and issued a Notice to Appear (NTA) charging him as removable

under 8 U.S.C. § 1227(a)(1)(B) for overstaying his tourist visa. Gov't Resp. 3. He was

subsequently detained at FDC Philadelphia under 8 U.S.C. § 1226(a) while his removal

proceedings are pending.[1] Gov't Resp. 3; Pet. ¶ 2.

---

[1]     Petitioner has no final order of removal, and the Government does not contend that he is
subject to mandatory detention under 8 U.S.C. § 1226(c) or 8 U.S.C. § 1225(b)(2)(A). *See* Gov't
Resp. 2-3; Pet. ¶¶ 16-17.

The record includes a Form I-213, Record of Deportable/Inadmissible Alien, dated June 1, 2026. Gov't Ex. A, Dkt. No. 4-1. This form contains information about Petitioner's arrest and his personal history, including that he "does not have any known criminal record," he "does not have any outstanding wants or warrants," and he "denies membership in any gang or criminal organization." *Id.* at 4. The same form states, under "Disposition," that Petitioner "is subject to President Donald Trump's Executive Order titled, 'Protecting the American People Against Invasion,'" and, in the next line, that he "will be detained without bond at this time." *Id.* The record also includes a Form I-286, Notice of Custody Determination, dated June 1, 2026. The form includes a section for an "Authorized Officer" to determine whether Petitioner is detained or released by selecting "Detained" or "Released." Gov't Ex. D, Dkt. No. 4-4. The form, displayed below, reflects the officer selected "Detained." *Id.*

DEPARTMENT OF HOMELAND SECURITY
**NOTICE OF CUSTODY DETERMINATION**

Alien's Name: VIEIRA DOS REIS, ONIVALDO     A-File Number: ███████

Date: 06/01/2026

Event ID: ███████     Subject ID: ███████

Pursuant to the authority contained in section 236 of the Immigration and Nationality Act and part 236 of title 8, Code of Federal Regulations, I have determined that, pending a final administrative determination in your case, you will be:

☒ Detained by the Department of Homeland Security.

☐ Released (check all that apply):

    ☐ Under bond in the amount of $ _____

    ☐ On your own recognizance.

    ☐ Under other conditions. [Additional document(s) will be provided.]

CLARK, J 8355
Name and Signature of Authorized Officer

06/01/2026 8:59 AM
Date and Time of Custody Determination

DOCKET CONTROL OFFICE PHILADELPHIA

SDDO
Title

PHILADELPHIA, PA US
Office Location/Address

The form also reflects that Petitioner requested immigration judge review of ICE's custody determination. *Id.* A virtual custody redetermination hearing was scheduled for June 11, 2026 at

the immigration court in Elizabeth, New Jersey. Gov't Ex. E, Dkt. No. 4-5. The Government represents Petitioner cannot attend a bond hearing while detained at FDC Philadelphia because the facility does not facilitate virtual immigration hearings for ICE detainees. Gov't Resp. 4. The Government states ICE would need to transfer Petitioner to another detention facility (i.e., the Moshannon Valley Processing Center in Philipsburg, Pennsylvania) for the virtual hearing to occur. *Id.*

Petitioner filed this petition on June 2, 2026. He argues his detention violates the Due Process Clause because ICE did not make an individualized custody determination before depriving him of liberty and his arrest violates the Fourth Amendment. Pet. ¶¶ 18-32; Pet'r's Reply 3-7, Dkt. No. 5. The Government opposes the petition, arguing Petitioner must exhaust administrative remedies before an immigration judge and the Board of Immigration Appeals (BIA), and ICE's detention determination under § 1226(a) satisfies the Due Process Clause. Gov't Resp. 6-13.

## JURISDICTION

Federal district courts have habeas jurisdiction over § 2241 petitions that raise constitutional challenges to immigration detention. *Demore v. Kim*, 538 U.S. 510, 522-23 (2003); *Khalil v. President, United States,* 164 F.4th 259, 273 (3d Cir. 2026) (finding the district court "correctly held that it had habeas jurisdiction over [the petitioner's] petition"); *see also INS v. St. Cyr*, 533 U.S. 289, 301 (2001) ("At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest.").

The Government argues 8 U.S.C. § 1252(g) strips this Court of jurisdiction. Gov't Resp. 5-6. It does not. Section 1252(g) states, "no court shall have jurisdiction to hear any cause or claim

by or on behalf of any alien arising from the decision or action by the Attorney General to (1) commence proceedings, (2) adjudicate cases, or (3) execute removal orders against any alien under this chapter." The Third Circuit has cautioned this bar "does not sweep broadly" and "reaches only these three specific actions, not everything that arises out of them." *Tazu v. Att'y Gen. U.S.*, 975 F.3d 292, 296 (3d Cir. 2020) (citing *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (plurality opinion)); *see also Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("It is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings."). Because Petitioner is challenging the legality of his present detention and not the commencement of removal proceedings against him, § 1252(g) does not bar his claims.

Nor does § 1226(e) bar this action. Section 1226(e) precludes review of the Attorney General's discretionary judgment regarding detention or release under § 1226. 8 U.S.C. § 1226(e). It does not, however, bar constitutional challenges to the procedures used to detain a noncitizen. *See, e.g.*, *Jennings*, 583 U.S. at 295-96 (plurality opinion) (holding that constitutional challenge to "the extent of the Government's detention authority" is not a challenge to discretionary judgment); *Demore*, 538 U.S. at 516-17 (holding that a constitutional challenge to "the statutory framework that permits [petitioner's] detention" is not a challenge to a discretionary judgment by the Attorney General). The Court does not review whether ICE should have detained Petitioner as a discretionary matter. Rather, it reviews whether ICE applied the procedures that § 1226(a) and the Due Process Clause require before exercising discretionary detention authority. Such review is permissible under § 1226(e).

**DISCUSSION**

Petitioner argues his detention violates the Due Process Clause because ICE did not make an individualized custody determination before detaining him under § 1226(a). The Government contends Petitioner must exhaust administrative remedies by pursuing a bond hearing before an immigration judge and, if necessary, an appeal to the BIA. It also asserts the Petitioner is lawfully detained under § 1226(a). The Court disagrees with the Government and finds the Petitioner's detention does violate his due process rights.

Section 2241 habeas petitioners are ordinarily required to exhaust administrative remedies, but the statute itself contains "no [explicit] exhaustion requirement." *Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000); *see* 28 U.S.C. § 2241. Exhaustion under § 2241 is therefore prudential. *See McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) ("[W]here Congress has not clearly required exhaustion, sound judicial discretion governs."); *Enos*, 230 F.3d at 633-34 (mandating exhaustion due to "principles of comity"). Courts may excuse prudential exhaustion if "administrative remedies would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable injury." *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988).

Exhaustion here is excused for two independent reasons. First, Petitioner challenges the legality of the initial deprivation of liberty. He argues ICE failed to make the individualized custody determination § 1226(a) requires before detaining him, in violation of the Due Process Clause. A later bond hearing does not necessarily cure the alleged constitutional violation that preceded it. *See Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025) (explaining that "any post-deprivation review by an immigration judge" is inadequate where ICE failed to conduct an individualized assessment before detention); *Gopie v. Lyons*, No. 25-05229, 2025 WL 3167130, at *3 (E.D.N.Y. Nov. 13, 2025) (finding "a bond hearing before an immigration judge

5

is a 're-determination' of custody—it assumes that a valid custody determination was made in the first instance"). Second, the record undermines the Government's assertion that the administrative remedy (bond hearing) is presently available. The Government acknowledges Petitioner cannot attend his scheduled bond hearing while detained at FDC Philadelphia because that facility does not facilitate virtual hearings for ICE detainees. The Government says ICE would need to transfer him to a different detention facility for the virtual hearing to proceed. In other words, the Government's own detention arrangements impede his access to the scheduled bond hearing.[2] A remedy that exists only if ICE elects to make it accessible is not an available remedy Petitioner must exhaust. *Cf. Ross v. Blake*, 578 U.S. 632, 642 (2016) (finding that, in the context of the PLRA, a prisoner "need not exhaust unavailable" remedies); *Gowen v. Winfield*, 130 F.4th 162, 176 (4th Cir. 2025) (concluding that, in the context of the PLRA, an "administrative remedy is considered unavailable 'if a prisoner, through no fault of his own, was prevented from availing himself of it.'"). The Court therefore finds that Petitioner does not need to exhaust administrative remedies.[3]

---

[2]     The Government points out that it cannot transfer Petitioner to a different facility because of the Court's order prohibiting ICE from transferring petitioner outside of this jurisdiction. The Court issued the order in response to the petition as a prophylactic measure to keep ICE from shipping Petitioner across jurisdictions without notice, as it has done so in other cases. *See, e.g.*, *Khalil*, 164 F.4th at 265 ("Though Khalil was initially detained in New York, by the time his lawyer filed the petition there, immigration officials had moved him to New Jersey."); *Ozturk v. Hyde*, 136 F.4th 382, 387 (2d Cir. 2025) ("But, when the petition was filed, Öztürk had already been driven across state lines to Vermont. And when the government eventually disclosed Öztürk's location nearly twenty-four hours later, she had again been moved, this time to a correctional facility in Louisiana."); Aala Abdullahi & Geoff Hing, *ICE Detained Them, and Then They Vanished*, The Marshall Project (June 1, 2026, at 6:00 ET), https://perma.cc/FGH7-FLP2 ("Rapid out-of-state transfers have become more common. . . . The agency rapidly transferred more than 1 in 10 people out of state within the first day of being detained."). In any case, FDC Philadelphia has remote hearing capabilities but cannot host an immigration virtual hearing, according to its attorney, because of an "agreement" with ICE. June 9, 2026, Status Conference, Dkt. No. 9.

[3]     The Government's reliance on *Ubaid v. Jamison* does not require a different result. No. 26-cv-2681, 2026 WL 1346670 (E.D. Pa. May 14, 2026). In *Ubaid*, the petitioner's futility argument rested on "statistical trends" about bond hearing outcomes. *Id.* at *3. The present case

Section 1226(a) provides that, pending a removal decision, the Attorney General "may continue to detain" a noncitizen or "may release" the noncitizen on bond or conditional parole. 8 U.S.C. § 1226(a). Thus, § 1226(a) establishes a discretionary detention framework. *See Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 279 (3d Cir. 2018). In practice, the implementing regulations provide for initial custody determinations and subsequent review by an immigration judge and the BIA. *See* 8 C.F.R. § 1236.1(c); 8 C.F.R. § 1236.1(d)(1) ("After an initial custody determination by the district director . . . the respondent may . . . request amelioration of the conditions" by application to an immigration judge.); 8 C.F.R. § 1236.1(d)(3) ("An appeal relating to bond and custody determinations may be filed to the [BIA]."); 8 C.F.R. § 1003.19(a) ("Custody and bond determinations made by the service . . . may be reviewed by an Immigration Judge."). The initial custody determination requires "an individualized determination as to . . . whether the noncitizen is a 'danger to property or persons' and is 'likely to appear for any future proceeding.'" *Lopez Benitez*, 795 F. Supp. 3d at 493 (quoting 8 C.F.R. § 1236.1(c)(8)); 8 C.F.R. § 1236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien . . . provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding.").

Because Petitioner is detained under § 1226(a), ICE had discretion to detain him or release him on bond or conditional parole, but it had to exercise that discretion through an individualized custody determination. The record does not show such an individualized assessment. The Government, in its brief, states ICE considered "negative equities," including Petitioner's lack of

presents a different question: whether ICE may require exhaustion when the petitioner challenges a defective initial custody determination. *Ubaid* did not decide that issue.

lawful status, and "positive equities," including his lack of known criminal history. Gov't Resp. 7-8. The record, however, is bereft of a reasoned finding that Petitioner is dangerous or a flight risk, or unsuitable for conditions short of detention.

The Form I-286 simply reflects that Petitioner is "Detained" with no explanation or reasoning as to why the authorizing officer made that determination. The Government's argument that ICE relied on Petitioner's legal status confirms the problem. Reliance on status alone amounts to "a per se determination" that "comports not with 1226(a), but with [the Government's] desired policy of detention." *See Pastrana-Beltran v. Mullin*, No. 26-cv-2657, 2026 WL 1398609, at *2 (E.D.N.Y. May 19, 2026); *Cajamarca-Janza v. Soto*, No. 26-cv-3066, 2026 WL 1506777, at *4 (E.D.N.Y. May 29, 2026) (finding that the government's reliance on the legal status "effectively creates a no-win situation for noncitizens writ large" because "[n]ot only is this not sufficiently individualized for purposes of Section 1226(a), but if taken to its logical conclusion," it allows ICE to "grant itself license to ignore the facts that do not fit its desired outcome"). The Form I-213 also records that Petitioner is subject to an executive order and "will be detained without bond at this time." Gov't Ex. A at 4. That is not an individualized custody determination. It is a categorical detention disposition. Section 1226(a) authorizes discretionary detention, not automatic detention by policy. A decision driven by a general executive directive, without a reasoned assessment of Petitioner's particular risk of flight or danger, therefore does not comply with § 1226(a).

Several recent decisions addressing analogous § 1226(a) detentions are persuasive. In *Pastrana-Beltran v. Mullin*, the court granted habeas relief where ICE failed to make a contemporaneous and individualized custody determination and relied on immigration status alone to find flight risk. 2026 WL 1398609, at *2-3. In *Curimilma Quille v. Blanche*, the court reached the same conclusion where the custody determination relied on generic facts and inaccurate

assumptions rather than individualized risk. No. 26-cv-2818, 2026 WL 1453889, at *3-5 (E.D.N.Y. May 22, 2026). And in *Cajamarca-Janza v. Soto*, the court granted release where ICE's custody form failed to account for record evidence of community ties and relied on status-based reasoning. 2026 WL 1506777, at *3-5. The same principles apply here. The Court holds only that ICE must exercise § 1226(a) discretion through an individualized determination. On this record, ICE did not do so.[4]

Petitioner's continued detention violates his due process rights. The Due Process Clause "applies to all 'persons' within the United States, including [noncitizens]" in removal proceedings. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). In the civil immigration detention context, due process requires procedures reasonably calculated to avoid erroneous deprivation of liberty. *See Mathews v. Eldridge*, 424 U.S. 319, 333-35 (1976); *Gayle v. Warden Monmouth Cnty. Corr. Inst.*, 12 F.4th 321, 331-32 (3d Cir. 2021) (applying *Mathews* to civil immigration detention context). Under *Mathews*, the Court balances: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

---

[4] The *Accardi* doctrine reinforces the Court's conclusion. Under *Accardi*, "when an agency promulgates a regulation protecting fundamental statutory or constitutional rights of parties appearing before it, the agency must comply with that regulation." *Leslie v. Att'y Gen. of U.S.*, 611 F.3d 171, 175-80 (3d Cir. 2010) (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)); *see also Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures."); *N- N- v. McShane*, 813 F. Supp. 3d 496, 501 (E.D. Pa. 2025) ("When presented with a habeas petition, courts may invalidate an agency action in violation of the *Accardi* doctrine.").

The first *Mathews* factor strongly favors Petitioner. Freedom from physical confinement "lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. The second factor also favors Petitioner. The risk of erroneous deprivation is high when ICE detains a person without identifying why that person presents a danger or flight risk. The risk is concrete here, where the Form I-213 includes facts that cut against detention: no known criminal history, no outstanding warrants, and no identified gang or criminal organization membership. Yet ICE does not explain why those facts were insufficient, why Petitioner posed a flight risk, or why conditions short of detention could not reasonably ensure appearance. It instead points to an executive order and declares detention without bond. The probable value of additional process is substantial. A contemporaneous, individualized custody determination would require ICE to explain why detention, rather than release on conditions, is necessary for *this* Petitioner. It would also create a record that permits meaningful review of whether the required procedure occurred.

The final *Mathews* factor does not outweigh Petitioner's liberty interest. The Government has legitimate interests in ensuring appearance at removal proceedings and protecting the community. *See Zadvydas*, 533 U.S. at 690. Those legitimate interests, however, support detention only when the Government connects them to the individual detainee. The Government has not shown Petitioner is dangerous. Nor has it shown that he poses a flight risk that cannot be mitigated by bond or conditions. The process § 1226(a) contemplates—requiring ICE to make and document a particularized custody determination—imposes no undue burden. On balance, Petitioner's continued detention violates the Due Process Clause.[5]

---

[5]    Because the Court finds that Petitioner's detention violates the Due Process Clause, it need not decide his Fourth Amendment claim.

10

Having determined that Petitioner's detention violates his due process rights, the proper remedy here is release. The "typical remedy" for "unlawful executive detention" is release. *Munaf v. Geren*, 553 U.S. 674, 693 (2008). Particularly here, where a later immigration court bond hearing does not provide an adequate remedy for the unconstitutional initial deprivation. *See Lopez Benitez*, 795 F. Supp. 3d at 497. The Court will therefore order the Government to release Petitioner. This remedy restores the status quo before the unlawful detention. It does not adjudicate Petitioner's removability or bar his removal proceedings. It also does not prevent the Government from seeking future detention under § 1226(a) provided it shows that detention is warranted under constitutionally adequate procedures.

**CONCLUSION**

Accordingly, the Court will grant Petitioner's Petition for a Writ of Habeas Corpus and order his immediate release. An appropriate Order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.